Judgment rendered June 24, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,526-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Appellee

versus

RADRAREAN TREMELL WEST                Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 359062

Honorable Katherine Dorroh, Judge

* * * * *

LOUISIANA APPELLATE PROJECT           Counsel for Appellant
By: Mary Constance Hanes

JAMES E. STEWART, SR.                 Counsel for Appellee
District Attorney

JASON W. WALTMAN
NANCY BERGER-SCHNEIDER
TOMMY J. JOHNSON
Assistant District Attorneys

* * * * *

Before PITMAN, GARRETT, and McCALLUM, JJ.

**GARRETT, J.**

Following a jury trial, the defendant, Radrarean Tremell West, was convicted of the following offenses and sentenced as set forth below: count one, illegal carrying of weapons while in possession of a controlled dangerous substance ("CDS"), eight years at hard labor without benefit of probation, parole, or suspension of sentence, and a $2,500 fine; count three, resisting an officer, six months in the parish jail; count four, domestic abuse aggravated assault with child endangerment, three years at hard labor, and a $2,500 fine; count five, aggravated battery, eight years at hard labor; and count six, second offense domestic abuse battery with child endangerment, six months in the parish jail, with 14 days to be served without probation, parole, or suspension of sentence, and a fine of $750. Prior to trial, the defendant had pled guilty to count two, possession of a firearm by a convicted felon, for which he was sentenced to 12 years at hard labor without benefit of probation, parole, or suspension of sentence, and a $2,500 fine. The trial court ordered that the sentences be served concurrently. The defendant appeals as excessive the sentences for illegal carrying of weapons while in possession of a CDS, possession of a firearm by a convicted felon, and aggravated battery. Pursuant to our error patent review, the defendant's sentence for domestic abuse aggravated assault with child endangerment is amended to provide that the first two years of the three-year sentence are imposed without benefit of probation, parole, or suspension of sentence. In all other respects, we affirm the defendant's convictions and sentences.

## FACTS

On the evening of June 25, 2018, deputies from the Caddo Parish Sheriff's Office ("CPSO") were called to the Grand Oaks apartment

complex in north Caddo Parish for a domestic abuse incident involving the defendant and his wife, Shatori Layton. The defendant and Ms. Layton had been together for 10 years and married for four years. The couple and their three young children lived in an apartment at the complex, where the defendant was employed as a "make ready" tech who helped prepare apartments for new occupants.

According to Ms. Layton's statement to one of the responding deputies, a verbal argument in their apartment had escalated into a physical altercation, with the defendant hitting her on the side of her face with a closed fist, threatening to kill her while brandishing a handgun, and hitting her on the back of the head with the handgun. She had fled with their infant son to the apartment of the complex manager, who was also a close friend. The manager called 911. Because the call involved a firearm, several deputies responded to the call. When ordered to put his hands up and come forward, the defendant attempted to run past the officers while exiting his apartment. However, the officers were able to force the defendant to the ground and handcuff him. During the struggle, the defendant repeatedly reached for his pocket. After he was handcuffed, a search revealed a .45 caliber Ruger handgun in his front left pocket. The weapon had a fully loaded extended magazine and a round in the chamber. The defendant was also found to be in possession of suspected marijuana and Ecstasy pills.[1]

On August 24, 2018, the defendant was charged by bill of information with domestic abuse aggravated assault with child endangerment, illegal carrying of weapons while in possession of a CDS, possession with intent to

---

[1] Subsequent laboratory analysis revealed that the pills actually contained methamphetamine.

distribute Schedule II CDS, possession of a firearm or carrying a concealed weapon by a convicted felon, resisting a police officer with force or violence, and domestic abuse battery, second offense, with child endangerment. Three amended bills of information were filed, primarily making changes as to the drugs involved. Eventually, a charge of aggravated battery was added, and the charge of possession with intent to distribute Schedule II CDS was dropped.

On July 22, 2019, the matter came up for jury trial. Prior to the commencement of trial, the defendant pled guilty to the charge of possession of a firearm by a convicted felon, his previous felony being a 2009 conviction for possession of Schedule I CDS with intent to distribute. There was no agreement as to sentencing, which was deferred pending the outcome of the trial. He then proceeded to trial on the remaining five charges.

The apartment complex manager testified that Ms. Layton came to her apartment with her infant and told her that she and the defendant had gotten into an argument. Ms. Layton further said that she had left their apartment because she was scared due to the defendant having a gun. This also frightened the manager, who worried about someone on the property being hurt. When she called 911, she informed the dispatcher of the gun's presence.

The state presented the testimony of five deputies who responded to the domestic abuse call. Deputy John Berry was the first officer to respond, followed almost immediately by Deputy Nathan Wesson. The apartment manager met them in the parking lot and pointed out the defendant's apartment. They went to the apartment, where they made contact with the defendant, instructing him to come to them with his hands up. When the

defendant got close to them, he dropped his arms and tried to run past them. A struggle ensued as the deputies attempted to gain control of the defendant and handcuff him. At this time, Deputies Magalene Boykin and Sean Channell arrived and assisted in subduing the defendant. The defendant repeatedly reached for his pocket as he struggled with the officers. After he was handcuffed, Deputy Wesson testified that he located a gun in the front left pocket of the defendant's shorts. Deputies Boykin and Channell had to carry the noncompliant defendant to the front of a patrol car because he went limp; while carrying the defendant, Deputy Channell received a small cut on his arm. Because the defendant was scratched up in the confrontation with the officers, the fire department was called to examine him. They treated him for his injuries on scene.

Deputy Eric Greene was one of the last officers to arrive. He observed the defendant rolling on the ground and flailing his arms as the other deputies attempted to handcuff him. He testified that the defendant was wearing blue jeans and gym shorts. The loaded handgun was found in one pocket of the defendant's gym shorts, while $500 (five $100 bills) was recovered from the other pocket. About 9.5 grams of a substance later confirmed to be marijuana was found in the right pocket of his jeans. Five and one-half pills were located in the change pocket of the jeans. Although they were originally suspected to be Ecstasy pills, they were later found to contain methamphetamine.

While fire department personnel examined the defendant, Deputy Greene interviewed Ms. Layton. He described her as being visibly upset and "in shock." Deputy Berry, who was also present for the interview, testified that she was timid and rattled. Her hair was in disarray, which she attributed

4

to her physical struggle with the defendant in their apartment. She told Deputy Greene that she and the defendant had argued verbally and that he then struck her with a closed fist beside her left eye. Thereafter, she picked up their baby. While she was holding the child, the defendant took out his handgun and started pointing it at her head, stating, "I hate you, bitch. You're going to die today." He pointed the gun at her several times and eventually struck her in the back of the head with it. Based upon this account, Deputy Greene had the fire department personnel examine Ms. Layton. Because she wore hair extensions, Deputy Greene said he could not see a bump on the back of her head from the blow. Deputy Greene took several photos of Ms. Layton to document her condition. They showed an area of her head where hair extensions were missing. Photos of the apartment were also taken; they showed pieces of her hair extensions on the bathroom counter. Deputy Berry testified that he could see where the hair had been detached from her head, and he recalled seeing pieces of hair throughout the apartment.

LaShana Harris, a special victims unit investigator for the Caddo Parish District Attorney's Office, testified that she interviewed Ms. Layton on June 28, 2018. A recording of the interview was played for the jury during Ms. Layton's testimony. During the interview, Ms. Layton described the defendant as not being in "his right mind." He accused her of having had a man in their apartment and he began throwing clothes around. Ms. Layton told Ms. Harris that the defendant pushed her and she pushed him back. When she grabbed a kitchen knife to try to defend herself at one point, the defendant slapped it out of her hand. He hit her on the left side of her face with his fist. When she fled into their bedroom, she saw him pull the

gun from his pants. She shut the bedroom door, but he knocked it open and tried to reach for his gun again. When he tripped and fell, she rushed past him, got the baby from his high chair, and ran to the front door of the apartment. However, the defendant beat her to the door, which he shut and locked. She sat down on the sofa with the baby in her lap as he stood in front of her with the gun. She pleaded with him to let her put the baby down if he was going to kill her. He pulled her hair with his right hand while holding the gun in his left hand. With all her strength, she pushed him and then fled the apartment with the baby.

At trial, Ms. Layton testified that her husband left the apartment by himself while she was preparing dinner. When he returned, his eyes were bigger and he seemed to have difficulty focusing. They exchanged words. He accused her of having another man in the apartment and letting that man out the back door. She testified that the back door could not be opened without moving tires that were stacked near it. She recalled pushing and fighting with the defendant but testified everything else was "a blur." She said she pushed him and he fell into their laundry baskets. She also said he hit her at the back of her head but denied that he hit her with anything. She also denied that any of her hair extensions were missing.

Ms. Layton testified that she had never seen the handgun before and did not know where it came from. She said she first observed it in the defendant's waistband and that she became "very afraid" when she saw it. She said that, holding her baby tightly, she pushed into the defendant "almost like a football tackle," knocking him down on a table, and then ran out of the apartment with the baby. She said the defendant pulled out the gun as she was leaving the apartment.

6

Ms. Layton said she was hysterical and very upset at her friend's apartment while they waited for the police to arrive. She did not recall photos being taken of her; however, when shown the photos, she admitted they accurately depicted her appearance. She said she did not recall telling the police or the DA investigator that the defendant threatened her while holding the gun. After the recording of her interview with the DA investigator was played for the jury, Ms. Layton testified that she did not "physically remember" everything she said in the statement, stating that she didn't know if her mind was "blocking it out." Ms. Layton admitted that the defendant had a prior domestic abuse battery conviction for an incident in 2016, in which she was the victim.

On cross-examination, Ms. Layton said she had known the defendant since she was 16 years old and that she did not plan to divorce him. She stated that she told the police, the DA investigator, and a defense investigator different versions of what happened and that she did so to try to help the defendant. She told the defense investigator that the information she gave the police was false. She said that the defendant was not in his "right mind" at the time of the incident and that he made "crazy" accusations about her having another man in the apartment. She said she was surprised by the presence of the gun because the defendant knew they were not allowed in their household. She said she pushed the defendant first, but asserted that she felt he was going to possibly do her harm. He fell in the laundry basket but got up uninjured. Because it was "a traumatic experience" she preferred to forget, she said she could not recall exactly what happened "step by step" after that. She said she did not recall being physically hit but remembered being pushed. She testified that she did not

recall the defendant hitting her with the gun. She also denied that he pointed it at her head or the baby. On redirect-examination, Ms. Layton said she did not recall Deputy Greene taking photos of her. She also said she did not recall telling Deputy Greene that the defendant pistol-whipped her in the head with the gun or pointed the gun at her while telling her she was going to die that day.

A forensic chemist from the North Louisiana Crime Lab testified on the state's behalf that the substances found in the defendant's pockets were marijuana and methamphetamine. A probation officer from the CPSO probation division testified that the defendant was placed on probation for a six-month period on December 5, 2016, on a prior conviction for domestic abuse battery. The supporting documentation admitted into evidence indicated that, in the prior case, the defendant punched Ms. Layton in the facial area with a closed fist. After the state rested its case, the defendant elected not to testify or present any evidence.

The jury found the defendant guilty as charged of all counts except the offense of resisting a police officer with force or violence. On this count, it found him guilty of the responsive verdict of resisting an officer. The record indicates that all verdicts were unanimous.

On August 14, 2019, the defendant filed a motion for post-verdict judgment of acquittal. The motion was subsequently denied.

On August 27, 2019, the trial court sentenced the defendant to the following terms of imprisonment which are the subjects of the instant appeal: illegal carrying of weapons while in possession of a CDS, eight years at hard labor without benefit of probation, parole, or suspension of sentence, and a $2,500 fine; possession of a firearm by a convicted felon, 12

years at hard labor without benefit of probation, parole, or suspension of sentence, and a $2,500 fine; and aggravated battery, eight years at hard labor. Additionally, the trial court imposed the following sentences, none of which the defendant contests in the instant appeal: resisting an officer, six months in the parish jail; domestic abuse aggravated assault with child endangerment, three years at hard labor, and a $2,500 fine; and domestic abuse battery, second offense, with child endangerment, six months in the parish jail, of which 14 days were to be served without probation, parole, or suspension of sentence, and a fine of $750. The trial court directed the defendant to pay court costs and $50 to the Indigent Defender Office on each count. It also ordered that all of the sentences, including the fines, court costs, and the fees to the Indigent Defender Office, be concurrent. The trial court noted that aggravated battery and domestic abuse aggravated assault were crimes of violence.

On September 16, 2019, the defendant filed a motion to reconsider his sentences. The trial court issued a written ruling denying the motion on December 3, 2019.

The defendant appealed, arguing that his three most severe sentences were excessive.

## EXCESSIVE SENTENCES

### *Law*

An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the

article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. DeBerry*, *supra*. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. DeBerry*, *supra*. There is no requirement that specific matters be given any particular weight at sentencing. *State v. DeBerry*, *supra*; *State v. Shumaker*, 41,547 (La. App. 2 Cir. 12/13/06), 945 So. 2d 277, *writ denied*, 07-0144 (La. 9/28/07), 964 So. 2d 351.

Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Meadows*, 51,843 (La. App. 2 Cir. 1/10/18), 246 So. 3d 639, *writ denied*, 18-0259 (La. 10/29/18), 254 So. 3d 1208.

As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Meadows*, *supra*. The sentencing court has wide discretion in imposing a sentence within

10

statutory limits, and such a sentence will not be set aside as excessive in the absence of manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Duncan*, 47,697 (La. App. 2 Cir. 1/16/13), 109 So. 3d 921, *writ denied*, 13-0324 (La. 9/13/13), 120 So. 3d 280. The trial court is in the best position to consider the aggravating and mitigating circumstances of a particular case and, therefore, is given broad discretion in sentencing. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So. 2d 957, *cert. denied*, 519 U.S. 1043, 117 S. Ct. 615, 136 L. Ed. 2d 539 (1996); *State v. Jackson*, 51,575 (La. App. 2 Cir. 9/27/17), 244 So. 3d 764.

Aggravated battery has a sentencing range of imprisonment with or without hard labor for not more than 10 years, a fine of not more than $5,000, or both. La. R.S. 14:34(B).

The offense of illegal carrying of weapons while in possession of a CDS (except the possession of 14 grams or less of marijuana) is punishable by a fine of not more than $10,000 and imprisonment at hard labor for not less than five nor more than 10 years without the benefit of probation, parole, or suspension of sentence. *See* La. R.S. 14:95(E).

The defendant was charged with and pled guilty to possession of a firearm by a convicted felon under La. R.S. 14:95.1, due to his prior conviction for possession of Schedule I CDS with intent to distribute. This offense carries a sentencing range of imprisonment at hard labor for not less than five nor more than 20 years without the benefit of probation, parole, or suspension of sentence, and a fine of not less than $1,000 nor more than $5,000.

11

**DISCUSSION**

In contesting his three most severe sentences, the defendant contends that the trial court failed to consider mitigating factors, such as the defendant being under the influence of drugs at the time of the offenses and the victim's provocation of the defendant when she escalated a verbal argument by pushing him. He also criticizes the trial court for ignoring the wishes of the victim, who had forgiven him and did not want him to be punished harshly, and for its efforts to "protect" the victim by imposing lengthy sentences. The state maintains that the trial court properly applied La. C. Cr. P. art. 894.1 and that it did not abuse its discretion in imposing mid-range sentences.

Our review of the record reveals that the trial court fully complied with the provisions of La. C. Cr. P. art. 894.1 in sentencing the defendant. It thoroughly considered all of the relevant factors and carefully articulated its reasons for imposition of the defendant's sentences, which were ordered to be served concurrently. The trial court found all three provisions of La. C. Cr. P. art. 894.1(A) to be applicable: (1) there was an undue risk that during the period of a suspended sentence or probation the defendant would commit another crime; (2) the defendant was in need of correctional treatment or a custodial environment that could be provided most effectively by his commitment to an institution; and (3) a lesser sentence would deprecate the seriousness of the defendant's crimes. The trial court found several of the aggravating factors enumerated in La. C. Cr. P. art. 894.1(B) to be present: (B)(1) the defendant's conduct during the commission of the offense manifested deliberate cruelty to the victim; (B)(5) the defendant knowingly created a risk of death or great bodily harm to more than one

12

person; (B)(6) the defendant used threats or actual violence in the commission of the offense; (B)(10) the defendant used a dangerous weapon in the commission of the offense; and (B)(19) the defendant used a firearm or other dangerous weapon while committing or attempting to commit an offense which has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, and which by its very nature, involves a substantial risk that physical force may be used in the course of committing the offense. In mitigation, the trial court noted the victim's efforts to minimize the events and her need for the defendant's financial support in raising their three children. However, in view of the fact that this was the second domestic violence incident involving the couple, the trial court expressed concern for the victim's safety.

Of the six offenses for which the defendant was sentenced, the one with the highest exposure was the crime of possession of a firearm by a convicted felon. Before trial, the defendant pled guilty to this offense, which had a mandatory minimum sentence of five years at hard labor without the benefit of probation, parole, or suspension of sentence and a potential maximum sentence of 20 years at hard labor without the benefit of probation, parole, or suspension of sentence. The trial court imposed a mid-range sentence of 12 years without the benefit of probation, parole, or suspension of sentence. The defendant, a convicted drug felon, was not only in possession of the handgun, but he also used it to brutalize and terrorize his wife, who was holding their infant child in her arms. He later tried repeatedly to reach for the fully loaded weapon while struggling with the police. In view of these facts, we do not find this sentence to be excessive.

The other gun-related charge, illegal carrying of weapons while in possession of a CDS, likewise had a mandatory minimum sentence of five years at hard labor without the benefit of probation, parole, or suspension of sentence; the maximum sentence was 10 years at hard labor without the benefit of probation, parole, or suspension of sentence. The trial court imposed a sentence of eight years; given the mandatory minimum sentence, this term was in the middle of its discretionary range. Under the facts of the instant case, which involved the defendant carrying a gun with a fully loaded extended magazine and a round in the chamber while possessing methamphetamine and struggling with police officers who were attempting to arrest him for domestic abuse, we do not find this sentence to be excessive.

As to the offense of aggravated battery, the sentencing range was up to 10 years, with or without hard labor. The trial court imposed a near maximum sentence of eight years at hard labor. The evidence presented at trial and accepted by the jury demonstrated that, during a terrifying and violent incident, the defendant viciously attacked his wife and, at one point, struck her in the head with a handgun. Despite her forgiveness of the defendant, the fact remains that his actions during the instant altercation posed a substantial danger to his wife, who had already been the victim of physical abuse by the defendant which resulted in his prior conviction.[2] The facts of the instant case fully support this sentence.

---

[2] The evidence admitted at trial pertaining to this prior conviction showed that the trial judge who presided over the defendant's trial and sentenced him in the instant matter was the same judge who accepted his 2016 guilty plea. As a result, the trial court was familiar with the defendant and aware that he had not benefitted from the sentencing leniency shown to him in the previous case.

This assignment of error lacks merit.

**ERROR PATENT**

As to count two, possession of a firearm by a convicted felon, when the trial court imposed sentence, it failed to specify that the 12-year term of imprisonment was to be served "at hard labor." However, this error is harmless and self-correcting because La. R.S. 14:95.1 is a mandatory felony, requiring any sentence to be served at hard labor. *State v. Foster*, 50,535 (La. App. 2 Cir. 4/13/16), 194 So. 3d 674. We further note that the minutes fail to reflect that the sentence for this offense was properly imposed without benefit of probation, parole, or suspension of sentence and that the trial court also imposed a $2,500 fine. Accordingly, the trial court is instructed to correct these errors in the minutes, as the transcript controls over the minutes when there is a conflict. *State v. Lynch*, 441 So. 2d 732 (La. 1983); *State v. Bell*, 51,312 (La. App. 2 Cir. 5/17/17), 222 So. 3d 79.

As to count four, domestic abuse aggravated assault with child endangerment, the sentence of three years at hard labor was illegally lenient in that it failed to impose the mandatory minimum sentence by restricting benefits for the first two years. Accordingly, this sentence is hereby amended, in compliance with La. R.S. 14:37.7(D), to reflect that the first two years are imposed without benefit of probation, parole, or suspension of sentence, and, as amended, the sentence is affirmed.[3]

---

[3] Domestic abuse aggravated assault carries a penalty of imprisonment at hard labor for not less than one year nor more than five years and a fine of not more than $5,000. La. R.S. 14:37.7(C). Under the Domestic Abuse Aggravated Assault Child Endangerment Law, when the state additionally proves that a minor child 13 years of age or younger was present at the residence or any other scene at the time of the commission of the offense, the mandatory minimum sentence imposed by the court shall be two years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La. R.S. 14:37.7(D).

15

As to count six, domestic abuse battery, second offense, with child endangerment, the minutes incorrectly state that "[t]he court ordered all but fourteen (14) days of said sentence suspended."[4] The trial court is directed to correct the minutes accordingly.

## CONCLUSION

The defendant's sentence for domestic abuse aggravated assault with child endangerment is amended to provide that the first two years of this three-year sentence are imposed without benefit of probation, parole, or suspension of sentence and, as amended, is affirmed. In all other respects, the defendant's convictions and sentences are affirmed.

Furthermore, the trial court is directed to correct the minutes for counts two, four, and six, as specified above.

**SENTENCE FOR DOMESTIC ABUSE AGGRAVATED ASSAULT WITH CHILD ENDANGERMENT AMENDED AND, AS AMENDED, AFFIRMED; AFFIRMED IN ALL OTHER RESPECTS.**

---

[4] Second offense of domestic abuse battery is punishable by a fine of between $750 and $1,000, and imprisonment, with or without hard labor, for not less than 60 days nor more than one year. At least 14 days of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence, and the offender shall be required to complete a court-monitored domestic abuse intervention program. La. R.S. 14:35.3(D). At the time of the offense on June 25, 2018, the statute also provided that, under the Domestic Abuse Child Endangerment Law, when the state additionally proved that a minor child 13 years of age or younger was present at the residence or any other scene at the time of the commission of the offense, the execution of the minimum mandatory sentence provided by Subsection D shall not be suspended. *See* La. R.S. 14:35.3(I).

16