GARRETT, J.
The defendant, Billy R. Meadows, Jr., was originally charged with second degree murder in the death of his girlfriend's two-year-old child. Pursuant to a plea agreement, he pled guilty to a reduced charge of *641 second degree cruelty to juveniles, in violation of La. R.S. 14:93.2.3. The trial court later imposed the maximum sentence of 40 years at hard labor. The defendant appeals his sentence as excessive. We affirm the defendant's conviction and sentence.
FACTS
On July 21, 2015, the defendant's girlfriend left her young son in the defendant's care while she went to work. Several hours later, the defendant called and told her to return to the home they shared due to an emergency. She found the child cool to the touch, with blue lips and his eyes rolled back. She called 911, and the child was transported to the emergency room where he was pronounced dead. The child's stomach appeared swollen, and he had "visual bruises" on his body. Further examination revealed a discharge from his anal cavity.[1] Upon further examination of the child's anus, the doctor found evidence of sexual molestation. The defendant later gave differing versions to law enforcement officers of what transpired after the child's mother left for work. These included accounts wherein the child fell off a "pot" (apparently a commode or potty chair) or down the stairs, and that he had left the child alone in the residence only to return and find him unconscious under a coffee table. Thinking that the child was asleep, the defendant admitted kicking him. The defendant also provided inconsistent accounts of hitting the child with a belt in his genital area.
On August 10, 2015, the defendant was charged by grand jury indictment with the second degree murder of the child, during the perpetration or attempted perpetration of cruelty to juveniles. On January 10, 2017, he pled guilty to the crime of second degree cruelty to juveniles in exchange for the dismissal of a misdemeanor charge of simple criminal damage to property. The state also agreed that the sentence would run concurrent with any other sentence previously imposed and that the defendant would be allowed credit for time served from the date of his arrest. Because of the sensitive nature of the crime, the state and the defense agreed to offer the investigative case report as the factual basis for the plea. That report outlined in great detail the facts recited above. After accepting the plea, the trial court ordered a presentence investigation (PSI) report.[2]
On March 7, 2017, the defendant received the maximum sentence for second degree cruelty to juveniles, 40 years at hard labor. The trial court ordered that the sentence be concurrent with any other sentence, with credit for time served. Prior to imposing sentence, the trial court fully considered the contents of the PSI report, which had been reviewed by both the state and the defense. The trial court reviewed the facts of the matter, as well as the 34-year-old defendant's personal and educational history, noting that he dropped out of school in the ninth grade at age 16, was incarcerated at about age 18, and worked odd jobs. The defendant had four small children with three different women, but had never been married.
The trial court considered statements from the child's mother, expressing the anger and mental suffering she endured *642 because of the loss of her child, and from the child's grandmother, requesting justice for her grandson. It also took under advisement statements from several law enforcement officers, who requested the maximum sentence due to the severity of the crime.
The trial court reviewed the defendant's criminal history, noting that he had no juvenile record, but was a fourth-felony offender.[3] The defendant's felony criminal history included a September 2000 conviction for simple burglary, for which he originally received a suspended six-year sentence; however, his probation was revoked. He also had convictions in November 2001 for possession of a firearm by a convicted felon and simple burglary, for which he received concurrent sentences of 10 years at hard labor. Regarding these offenses, the trial court noted that the defendant was originally charged with aggravated burglary, a crime of violence, after he broke into a residence and stole money and guns. The defendant had a 2013 conviction for attempted possession of a firearm by a convicted felon and received a five-year hard labor sentence. The trial court also considered three misdemeanor convictions in 2011 and 2012.
The trial court considered the defendant's failure to complete probation or parole at any time due to his continued commission of crimes, noting that he was on parole at the time of the present offense.
The trial court reviewed La. C. Cr. P. art. 894.1, and in mitigation, considered the defendant's age, lack of prior convictions involving juveniles, and enrollment in a substance abuse program and a Bible ministry study.[4] It also considered the defendant's children; however, it noted that there was no evidence that he paid them any support. The trial court also reviewed statements by the defendant's mother and sister, who requested leniency in sentencing, and a letter and petition submitted on behalf of the defendant by a family member, which had 100 names listed on it.[5]
As aggravating factors, the trial court noted the defendant's criminal history. The trial court considered that the defendant received a substantial benefit from the plea agreement, which reduced the charge from second degree murder to second degree cruelty to juveniles. The court observed that the defendant never worked regularly or contributed to society and concluded that his conduct manifested deliberate cruelty to a two-year-old vulnerable child who was incapable of resistance. The court classified the offense as a heinous crime, reciting the injuries inflicted upon the child. They included blunt force trauma to the child's head, tears to his colon and anal area, and internal bleeding and internal injuries as a result of an object in the child's anal area. The trial court observed that the instant offense was "one of the worst" crimes it had ever seen, and it considered the pain the child must have suffered. The court also recognized the psychological damage caused to the mother, who could not eat or sleep and was in constant mental pain since the death of her child.
*643 The trial court concluded that the defendant was in need of correctional treatment in a custodial environment that could be provided effectively by his commitment to an institution, that he would commit another crime if not incarcerated, and that a lesser sentence would deprecate the seriousness of the offense. Ultimately, the trial court determined that the defendant deserved the maximum sentence of 40 years at hard labor.
The defendant filed a motion to reconsider sentence arguing that the trial court failed to give sufficient weight to the fact that he had no prior convictions involving juveniles or crimes of violence, had voluntarily enrolled in substance abuse treatment and various Bible study programs, and expressed remorse for what happened to the victim. At the hearing on the motion to reconsider sentence, the defendant also argued that the trial court failed to give sufficient weight to his employment, his attempt to get a GED, and the list of individuals who supported him. He further requested that the trial court give no weight to any allegations by individuals that were not supported by the autopsy report. The trial court stated that it had already considered all of the above-noted facts in sentencing. Finding that the defendant's "horrible crime" which resulted in the death of the two-year old victim warranted the maximum sentence, it denied the motion to reconsider sentence.
This appeal followed. The defendant challenges his sentence as excessive. In a pro se filing, he also attacks his guilty plea.
EXCESSIVE SENTENCE
In the brief filed by appellate counsel, the defendant argues that the trial court failed to give sufficient weight to the mitigating factors of this case, including his age, lack of prior history of crimes of violence or crimes involving juveniles, and voluntary enrollment in programs to improve his life and become a law-abiding citizen. Further, he contends that his lengthy incarceration will be a hardship on his family and children and that the goals of punishment and rehabilitation can best be accomplished by a less severe sentence. In a pro se filing, the defendant requests a reduction in sentence, arguing that his four children are in need of his support and his family misses him. He points to his community work and job history in support of his request for a reduced sentence.
The state argues that the trial court did not abuse its discretion in sentencing the defendant within the statutory sentencing range and that the record contains an adequate factual basis for the sentence, which was reasonable considering the aggravating and mitigating factors.
Law
An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith , 433 So.2d 688 (La. 1983) ; State v. DeBerry , 50,501 (La. App. 2 Cir. 4/13/16), 194 So.3d 657, writ denied , 16-0959 (La. 5/1/17), 219 So.3d 332. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos , 419 So.2d 475 (La. 1982) ; State v. DeBerry , supra . The important elements which should be considered are the defendant's personal history (age, family ties, *644 marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. State v. Jones , 398 So.2d 1049 (La. 1981) ; State v. DeBerry , supra . There is no requirement that specific matters be given any particular weight at sentencing. State v. DeBerry , supra ; State v. Shumaker , 41,547 (La. App. 2 Cir. 12/13/06), 945 So.2d 277, writ denied , 07-0144 (La. 9/28/07), 964 So.2d 351.
Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey , 623 So.2d 1276 (La. 1993) ; State v. Bonanno , 384 So.2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver , 01-0467 (La. 1/15/02), 805 So.2d 166 ; State v. DeBerry , supra .
As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. DeBerry , supra ; State v. Woods , 41,420 (La. App. 2 Cir. 11/1/06), 942 So.2d 658, writs denied , 06-2768, 06-2781 (La. 6/22/07), 959 So.2d 494. However, in cases where the defendant has pled guilty to an offense which does not adequately describe his conduct, the general rule does not apply and the trial court has great discretion in imposing the maximum sentence possible for the pled offense. This is particularly true in cases where a significant reduction in potential exposure to confinement has been obtained through a plea bargain and the offense involves violence upon a victim. State v. DeBerry , supra ; State v. McKinney , 43,061 (La. App. 2 Cir. 2/13/08), 976 So.2d 802.
Discussion
The imposed maximum sentence is not unconstitutionally excessive. More than adequate La. C. Cr. P. art. 894.1 compliance is evident on the record before this Court. The sentencing transcript clearly reveals that the trial court took into consideration the defendant's age, children, criminal record, and participation in life improvement programs prior to sentencing. There is no requirement that specific matters be given any particular weight at sentencing. State v. DeBerry , supra . The record amply supports the trial court's determination that the mitigating factors presented were outweighed by the aggravating circumstances of this case. The maximum sentence is also supported by the record. The defendant's unprovoked and cruel actions caused the violent and senseless death of a young, defenseless child. The victim's injuries were unconscionable, to say the least, and qualify the defendant as the worst type of offender. His criminal record shows that he has failed to benefit from prior leniency in sentencing and probationary treatment. As the result of the plea agreement, he was allowed to plead to an offense that did not adequately describe his conduct, and he received a significant reduction in potential exposure. Thus, the chosen maximum sentence is not grossly disproportionate to the severity of the crime and does not shock the sense of justice. No abuse of the trial court's discretion has been shown. Consequently, we find that this assignment of error lacks merit.
VALIDITY OF GUILTY PLEA
In his pro se filing, the defendant appears to argue that he did not understand the charge to which he was pleading guilty *645 or how much time the offense would carry. In conjunction with this complaint, the defendant asserts that his trial counsel did not explain the charge to him and, if she had, he would have taken his case to trial.
Boykinization
The Louisiana Supreme Court adopted the federal constitutional standards set out in Boykin v. Alabama , 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), which requires that a guilty plea be recorded and show that the defendant was informed of and waived three specific federal constitutional rights. These rights are the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. State v. Warren , 42,699 (La. App. 2 Cir. 10/24/07), 968 So.2d 909, writ denied , 07-2485 (La. 5/16/08), 980 So.2d 707.
The Louisiana Supreme Court has reiterated that advice on sentencing is not part of the core Boykin constitutional requirements. State v. Anderson , 98-2977 (La. 3/19/99), 732 So.2d 517 ; State v. Warren , supra . It has long been held that dissatisfaction with the sentence or expected sentence imposed is not grounds for withdrawal of a guilty plea if the accused entered the plea with the advice of competent counsel and there is no indication that a prior commitment has been broken. State v. Clark , 414 So.2d 369 (La. 1982) ; State v. Burks , 47,587 (La. App. 2 Cir. 1/16/13), 108 So.3d 820, writ denied , 13-0424 (La. 7/31/13), 118 So.3d 1116.
La. C. Cr. P. art. 556.1 provides that the trial court, prior to accepting a plea of guilty, should inform the defendant of the nature of the charge to which the plea is offered and the minimum and maximum penalties provided by law.
Ineffective Assistance of Counsel
In order to prove an attorney was ineffective, a defendant must show that his attorney was deficient, and that he was prejudiced by the deficiency. Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defendant who pleads guilty and then claims he received ineffective assistance of counsel must first show that counsel's advice to plead guilty was not within the wide range of competence demanded of attorneys in criminal cases. The defendant must also show that, but for counsel's erroneous advice, he would have elected to go to trial rather than plead guilty. State v. Crawford , 15-0784 (La. 10/2/15), 176 So.3d 394, cert. denied , --- U.S. ----, 136 S.Ct. 1454, 194 L.Ed.2d 557 (2016) ; State v. Wry , 591 So.2d 774 (La. App. 2 Cir. 1991).
As a general rule, a claim of ineffective assistance is more properly raised in an application for post-conviction relief in the trial court than by appeal. This is because post-conviction relief creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State v. Winzer , 49,316 (La. App. 2 Cir. 10/8/14), 151 So.3d 135, writ denied , 14-2373 (La. 4/22/16), 191 So.3d 1044 ; State v. Cook , 48,355 (La. App. 2 Cir. 11/20/13), 127 So.3d 992, writ denied , 13-3000 (La. 5/30/14), 140 So.3d 1174. However, when the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy. State v. Winzer , supra .
Discussion
A review of the guilty plea shows that the defendant's claims have no merit. During the guilty plea colloquy, the defendant acknowledged that he had read, signed and understood the written plea agreement that has been filed into the record. Thereafter, the trial court defined the crime of second degree cruelty to juveniles, specifically including the sentencing range set forth in La. R.S. 14:93.2.3. The defendant was fully advised that he was *646 facing up to 40 years at hard labor. He indicated his understanding of both the charge and the terms of sentencing on the record and that he had consulted with his attorney who had advised him of the nature of the charge and his legal and constitutional rights. In open court, the trial court thoroughly advised the defendant of his constitutional rights per Boykin and determined that he knowingly and voluntarily waived these rights. Throughout the plea colloquy, the defendant indicated his willingness to plead guilty. Under the facts and circumstances of this case, the defendant has failed to provide any support for his contention that his guilty plea should be invalidated. Furthermore, he avoided additional sentencing exposure by being allowed to plead down from second degree murder, which carries a mandatory sentence of life imprisonment at hard labor without benefits.
At the guilty plea, the defendant's counsel specifically informed the trial court that she had advised him of the charges, as well as his legal and constitutional rights. Further, the guilty plea transcript clearly shows that the defendant was informed of the charge and sentencing range and that he indicated his understanding of both. Thus, the record belies his contention that his counsel's representation was deficient and is sufficient to demonstrate that this argument has no merit.
CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.

The state's answer to the defendant's motion for bill of particulars states that the child's cause of death was "cardiopulmonary arrest incident to multiple blunt force injuries with anal rectal trauma." It further states that a belt was used during the commission of this offense.

The record shows that the defendant was informed of and waived his rights to jury trial, confrontation and cross-examination of witnesses, and privilege against self-incrimination.

In brief, appellate counsel indicates that this appeal was requested before habitual offender proceedings occurred and that the defendant's habitual offender outcome and sentence will be appealed at a later date.

These facts were presented to the trial court in a letter from the defense counsel that the trial court considered. In the letter, counsel indicated that the defendant "regrets" what happened to the deceased child.

The trial court noted, as does this court, that all the names appeared to be signed by the same person. The petition extolled the defendant's "outstanding parenting skills" and described him as a "role model."