Judgment rendered January 13, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,704-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                         Appellee

versus

CHARLIE COLLINS                            Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 351029

Honorable Charles G. Tutt, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Douglas L. Harville

JAMES E. STEWART, SR.                  Counsel for Appellee
District Attorney

KODIE K. SMITH
TOMMY J. JOHNSON
Assistant District Attorneys

* * * * *

Before MOORE, GARRETT, and BLEICH (*Pro Tempore*), JJ.

**BLEICH, J**. (***Pro Tempore***)

The defendant, Charlie Collins, was charged by amended bill of information with two counts of aggravated incest, in violation of La. R.S. 14:78.1, regarding his stepdaughters, O.E. and Q.A.[1] He was also charged with the sexual battery of his stepdaughter, D.T., in violation of La. R.S. 14:43.1. Following a jury trial, the defendant was found guilty as charged on both counts of aggravated incest. He was found not guilty of sexual battery. He was sentenced to serve 20 years in prison at hard labor for the aggravated incest of O.E., and 10 years in prison at hard labor for the aggravated incest of Q.A.; the sentences were ordered to be served consecutively. For the reasons that follow, we affirm the defendant's convictions and sentences, and we remand this matter to the trial court with instructions to provide the defendant with the appropriate written notice with regard to the sex offender registration requirements.

## FACTS

In 2003, the defendant, Charlie Collins, married A.C., who was the mother of ten children.[2] The victims, O.E. and Q.A., lived with the defendant and their mother and shared a bedroom. Other siblings of the victims, including two older brothers, also lived in the household.

O.E., who was 26 years old by the time the trial was conducted, testified as follows: when she was nine years old and in the fourth grade, the defendant would come into her bedroom at night; the defendant would put

---

[1] The defendant was charged with aggravated incest, in violation of La. R.S. 14:78.1. That statute was repealed in 2014, and the offense of aggravated crime against nature was amended to include the elements and penalties of the crime of aggravated incest. *See* Acts 2014, No. 177 and La. R.S. 14:89.1.

[2] The defendant and A.C. did not have any children together.

his hands inside her vagina, "suck on her breasts", and "place [her] hand on top of his penis . . . to make stroking motions"; the molestation continued until she was in the seventh grade; she was awake when the defendant committed the inappropriate acts, and she would "just lay there"; she did not resist because she was afraid to do so; although she often complained to her mother about "hurting down there," she did not tell her mother about the molestation until the pain became "unbearable"; when her mother confronted the defendant, he denied the allegations and accused O.E.'s older brothers of committing the acts; her family was "very religious" and "very private about things"; her mother sought help from the pastor of their church; she (O.E.) once spoke via telephone to a pastor about the incidents; the defendant stopped molesting her after she told her mother, but their family, and O.E.'s relationship with her mother, deteriorated; and when she was 18 years old, she got married and moved out of the house to escape the environment.

O.E. testified unequivocally that the defendant molested her. She stated that no one else has ever touched her inappropriately. O.E. further testified that the molestation affected her "tremendously," noting that she receives counseling and therapy for post-traumatic stress disorder and depression. She also stated that the molestation caused "problems with affection" in her marriage and caused her to be very protective of her own children.

At the time of the trial, Q.A. was 21 years old. She testified as follows: the defendant began coming into her bedroom at night when she was seven years old; the defendant would touch her between her legs, underneath her clothes, and would run out of the room when she would

2

awaken; the incidents took placed "many" times; she did not tell her mother about the abuse until she became a teenager because, as a child, she did not know how to tell her mother; her family attended one counseling session at the church, but the molestation continued; she saw the defendant touch O.E. "between her legs"; and she moved out of the home when she was 17 years old because she "couldn't take it no more." Q.A. also testified unequivocally that the defendant was the only family member who touched her inappropriately.

The victims' mother, A.C., also testified at trial. She stated that O.E. began wetting the bed and complaining of pain "down there" when she was approximately 10 years old. A.C. testified that O.E. told her about the sexual abuse when she was "about 15," and also informed her about similar incidents involving Q.A and the defendant. According to the mother, Q.A. told her about the abuse when she was "about 17 or 18." A.C. further testified that she and the defendant were ministers in their church, and based on her religious training, she sought "help from the church" when her daughters told her about the molestation. A.C. stated that she, the defendant, O.E., and Q.A. attended at least three counseling sessions with the pastor of their church. After they completed the counseling sessions, the mother testified that she "told the girls to forgive, I mean, that's what the word of God tells you, you forgive and you love and you move on."

During cross-examination, A.C. acknowledged that as a special education teacher, she is a mandatory reporter of child abuse/neglect. However, she stated that she did not believe the same rules applied to her family because the "word of God" applied to her household, and she believed that she "was supposed to go to [the] church first." A.C. also

3

testified that she believed O.E. was being truthful when she told her about the molestation, but after talking to her pastor, "it was like it was over." She stated that she decided to begin counseling at the church because "there was always hostility between [the defendant] and the girls."

During redirect examination, A.C. testified that she decided to go to the church for counseling because she wanted to keep her family together. She also admitted that the defendant was the "breadwinner" in the household, and she was financially dependent on him. A.C. testified that, in hindsight, she "would have done things differently" and contacted the police when she learned of the abuse.

The victims' older brothers, E.E. and T.A., testified at the trial. E.E. unambiguously stated that he never touched his sisters inappropriately. T.A. also testified that he did not touch his sisters inappropriately. T.A. also stated that he left home when he was 16 years old because his mother and the defendant accused him of sexually abusing his sisters.[3]

The defendant did not testify, and no witnesses were called to testify on his behalf. However, during closing arguments, defense counsel noted that these crimes were not reported to police until April 15, 2017. According to defense counsel, the allegations were made shortly after, and in

---

[3] D.T. testified regarding Count Three (sexual battery), of which the defendant was acquitted. D.T., who was 36 years old by the time the trial was conducted, testified as follows: when she was 19 years old, she moved back into her mother's home with her newborn baby and another young child; one night, she awoke when she "felt something going up her leg"; she realized the defendant was touching her vagina; she clinched her thighs together, and the defendant left the room; she told her mother about the incident the following day; and her mother kicked her out of the home after she made the allegation. However, A.C. denied any knowledge of the incident involving D.T.

4

retaliation for, a domestic incident in which A.C. was arrested after she threatened the defendant with a kitchen knife.[4]

After hearing the testimony and arguments presented, the jury found the defendant guilty as charged of the aggravated incest of O.E. and Q.A. As stated above, the defendant was acquitted of the charge of sexual battery with regard to D.T.

A sentencing hearing was held on December 10, 2019. During the hearing, the defense presented the testimony of Jackie Holloway, who testified that she had known the defendant for 15 years and that he was a member of her church, Five Fold Ministries. She stated that the defendant volunteered with the church and served as a "lay minister." Holloway also expressed her belief that the defendant could be rehabilitated "because he takes responsibility for his actions."

At the conclusion of the sentencing hearing, the trial court sentenced the defendant to serve 20 years in prison at hard labor for the aggravated incest of O.E., and 10 years in prison at hard labor for the aggravated incest of Q.A. The sentences were ordered to be served consecutively. Thereafter, the defendant timely filed a motion to reconsider his sentences. The trial court denied the motion without providing reasons.

The defendant now appeals.

## DISCUSSION

The defendant contends the sentences imposed are constitutionally excessive. He argues that he was 42 years old when the sentences were

---

[4] A.C. admitted that she had previously pled guilty to disturbing the peace following a domestic incident. However, no facts regarding that incident were presented at trial.

5

imposed, and such lengthy sentences constitute "a *de facto* life sentence." The defendant also argues that the incidents occurred over a decade ago, and the victims did not report the crimes until after their mother was charged with a crime she allegedly committed against the defendant. Further, according to the defendant, he is a good candidate for rehabilitation because he has not committed any further, similar acts in over 10 years.

An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance, so long as the record reflects that he adequately considered the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions.

Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. DeBerry*, *supra*. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. DeBerry*, *supra*. The trial court is not required to assign any particular weight to any specific matters at sentencing. *State v. Parfait*,

6

52,857 (La. App. 2 Cir. 8/14/19), 278 So. 3d 455, *writ denied*, 19-01659 (La. 12/10/19), 285 So. 3d 489.

Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Meadows*, 51,843 (La. App. 2 Cir. 1/10/18), 246 So. 3d 639, *writ denied*, 18-0259 (La. 10/29/18), 254 So. 3d 1208.

The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Allen*, 49,642 (La. App. 2 Cir. 2/26/15), 162 So. 3d 519, *writ denied*, 15-0608 (La. 1/25/16), 184 So. 3d 1289. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case and, therefore, is given broad discretion in sentencing. *State v. Allen*, *supra*. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Adams*, 53,055 (La. App. 2 Cir. 11/20/19), 285 So. 3d 526, *writ denied*, 20-0056 (La. 9/8/20), 301 So. 3d 15.

As a general rule, maximum or near-maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Cozzetto*, 07-2031

La. 2/15/08), 974 So. 2d 665; *State v. Hogan*, 47,993 (La. App. 2 Cir. 4/10/13), 113 So. 3d 1195, *writ denied*, 13-0977 (La. 11/8/13), 125 So. 3d 445.

When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. Concurrent sentences arising out of a single course of conduct are not mandatory, and consecutive sentences under those circumstances are not necessarily excessive. *State v. Allen*, 52,318 (La. App. 2 Cir. 11/14/18), 260 So. 3d 703. It is within the court's discretion to make sentences consecutive rather than concurrent. *State v. Nixon*, 51,319 (La. App. 2 Cir. 5/19/17), 222 So. 3d 123, *writ denied*, 17-0966 (La. 4/27/18), 239 So. 3d 836.

When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. *State v. Williams*, 52,052 (La. App. 2 Cir. 6/27/18), 250 So. 3d 1200. Among the factors to be considered are the defendant's criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant constitutes an unusual risk of danger to the public, the potential for the defendant's rehabilitation, and whether the defendant has received a benefit from a plea bargain. The failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. *State v. Weston*, 52,312 (La. App. 2 Cir. 11/14/18), 260 So. 3d 722, *writ denied*, 18-2066 (La. 4/22/19), 268 So. 3d 299.

8

At the time the instant offenses were committed, La. R.S. 14:78.1(D) provided that a person convicted of aggravated incest shall be fined not more than $50,000, or imprisoned, with or without hard labor, for not less than five years nor more than 20 years, or both.[5]

We have reviewed this record in its entirety. We find that the trial court did not abuse its discretion in sentencing the defendant to serve 20 years at hard labor on Count One, involving O.E., and 10 years at hard labor on Count Two, involving Q.A., to be served consecutively.

In imposing the defendant's sentences, the trial court reviewed the facts of this case and stated that the evidence clearly showed that between 2002 and 2009, the defendant molested two of his stepdaughters, who were under the age of 17 when the offenses occurred. The trial court noted its review of the presentence investigation ("PSI") report, and stated that it "did not help" the defendant. The trial court did not set forth the details of the defendant's criminal history. However, the PSI report indicates that the defendant's criminal history is extensive. The report reveals the following prior convictions: simple robbery (1995), simple battery (1996), misdemeanor theft (1997), possession of a Schedule II CDS and possession of marijuana (1999), and simple battery and misdemeanor domestic abuse battery (2016). Other charges for which the defendant was arrested, but

---

[5] The bill of information alleged that the offenses occurred between November 1, 2002, and January 16, 2009. In 2006, La. R.S. 14:78.1(D) was amended to include an increased sentencing range for victims under the age of 13 – 25 years to life imprisonment at hard labor, with at least 25 years to be served without benefits. In 2008, La. R.S. 14:78.1(D) was amended again to reduce the maximum sentence to 99 years when the victim was under the age of 13. However, at the sentencing hearing in this case, the trial court indicated that although the incest continued for several years, it was not convinced that it continued after La. R.S. 14:78.1 was amended to enhance the penalty when the victim is under the age of 13. The State did not appeal that determination.

were later dismissed, include disturbing the peace (1995), second degree murder (1998), illegal use of weapons and possession of a firearm by a convicted felon (1998), possession of a firearm by a convicted felon and discharging a firearm inside the city limits (2002), and simple battery (2012).

In considering the sentencing factors in La. C. Cr. P. art. 894.1, the trial court found that the following aggravating factors applied in this case: (1) the defendant's conduct manifested deliberate cruelty to his stepdaughters; (2) the defendant knew or should have known that the victims were particularly vulnerable or incapable of resisting due to their youth; (3) the defendant used his position or status as the victims' stepfather to facilitate the offenses; (4) the offenses resulted in significant permanent injury or significant loss to his stepdaughters, who are still suffering from his actions; and (5) the length of time that the defendant's egregious conduct continued. The trial court also noted the seriousness of the offenses and stated that the defendant's conduct, as described by O.E., "was atrocious conduct." The trial court further noted that the defendant had failed to take responsibility for his actions and that no mitigating circumstances applied in this case.

We find that the record adequately supports the sentences imposed. Further, in ordering the sentences to be served consecutively, the trial court noted the factors it reviewed, including the defendant's criminal history, the gravity or dangerousness of the offense, the harm done to the victims, whether the defendant constitutes an unreasonable risk of danger to the public, and the potential for the defendant's rehabilitation. Although the trial court did not provide specific reasons for ordering that the sentences be

10

served consecutively, we find the court did not abuse its discretion in doing so because the record, including the disturbing facts of this case and the defendant's significant criminal history, provides an adequate factual basis to support the imposition of consecutive sentences.

Further, we find that the defendant's sentences are not constitutionally excessive. The record reveals that the defendant abused his position of trust and authority to repeatedly commit aggravated incest against his young, vulnerable stepdaughters. The defendant's continuous conduct caused severe psychological and physical pain to the victims and destroyed their relationships with their mother. Considering the defendant's deplorable conduct, the total 30-year sentence imposed by the trial court does not shock the sense of justice, nor is it grossly disproportionate to the severity of the offenses. This assignment of error is without merit.

## ERRORS PATENT

In accordance with La. C. Cr. P. art. 920, all appeals are reviewed for errors patent on the face of the record. A review of the record herein reveals one error.[6]

---

[6] The record reveals that the defendant was tried before a 12-person jury, but was only entitled to a 6-person jury. Both aggravated incest and sexual battery are punishable by imprisonment with or without hard labor. *See* La. R.S. 14:78.1 and 14:43.1. Although both statutes were amended in 2006 to include a mandatory hard labor sentence for victims under the age of 13, and the victims in this case were under the age of 13 when the offenses occurred, the bill of information did not allege facts to make that section of the statutes applicable.

Pursuant to La. Const. art. I, § 17 and La. C. Cr. P. art. 782, cases in which punishment may be confinement at hard labor shall be tried by a jury composed of 6 jurors, all of whom must concur to render a verdict. However, the Louisiana Supreme Court has held that the error in trying a 6-person jury offense in a 12-person jury forum is subject to harmless error analysis and warrants reversal only when the defendant is actually prejudiced. The defendant is also required to preserve the error for appeal. *See State v. Brown*, 11-1044 (La. 3/13/12), 85 So. 3d 52; *State v. Jones*, 05-0226 (La. 2/22/06), 922 So. 2d 508. In this case, the defendant failed to object and the verdict was unanimous. The defendant was not prejudiced and the error of impaneling more jurors than constitutionally and statutorily required was harmless. Thus, no action will be taken by this Court.

The record reveals that the trial court did not properly inform the defendant of the mandatory sex offender registration and notification requirements set forth in La. R.S. 15:540, *et seq.* Aggravated incest is defined as a sex offense under La. R.S. 15:541. La. R.S. 15:543 requires that the trial court notify a defendant convicted of a sex offense, in writing (*see* La. R.S. 15:543.1), of the registration and notification requirements and that an entry be made in the court minutes, stating that the written notification was provided to the defendant.

Although the trial court verbally stated that the defendant "must register for life as a sex offender," the record does not indicate that the defendant was provided with written notification of the sex offender requirements. Accordingly, we hereby remand this matter to the trial court for the purpose of providing the appropriate written notice to the defendant of the sex offender registration requirements and for the filing of written proof of such notice into the record of the proceedings. *State v. Pittman*, 52,027 (La. App. 2 Cir. 4/11/18), 248 So. 3d 573.

## CONCLUSION

For the foregoing reasons, the defendant's convictions and sentences are affirmed. We remand this matter to the trial court with instructions to provide the defendant with the appropriate written notice with regard to the sex offender registration requirements.

**CONVICTIONS AFFIRMED; SENTENCES AFFIRMED; REMANDED WITH INSTRUCTIONS.**

12