Judgment rendered March 9, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,190-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

Versus

SAMUEL CALEB PARKER                         Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 19CR4006

Honorable Hamilton Stephens Winters, Judge

* * * * *

ROBERT S. NOEL, II                          Counsel for Appellant


ROBERT STEPHEN TEW                          Counsel for Appellee
District Attorney

CHARLOTTE FARSHIAN
MICHAEL J. FONTENOT
Assistant District Attorneys

* * * * *


Before THOMPSON, ROBINSON, and O'CALLAGHAN (*Pro Tempore*), JJ.

**O'CALLAGHAN, J. (*Pro Tempore*)**

The defendant, Samuel Caleb Parker, was originally charged with second degree murder and pled guilty to manslaughter. He was sentenced to serve 36 years at hard labor. He appeals his sentence as excessive. For the following reasons, we affirm the conviction and sentence.

## FACTS

This offense involves the tragic shooting by 22-year-old Parker of Joseph Morris, who was also 22 years old. They were longtime friends. The shooting occurred in the parking lot of a convenience store after a night of drinking. Parker, the son of two osteopaths in Monroe, had a substance abuse problem. He pled guilty to a misdemeanor DWI in June 2017, and was sentenced to serve two years' probation. He failed to show up for meetings with his probation officer or fulfill any conditions of probation. Two separate bench warrants were issued for failure to appear in court. These were still active at the time of the present offense.

Parker had undergone substance abuse treatment for three months at Capstone Trauma Recovery Treatment Center in Arkansas and three months at The Carpenter Shed in West Monroe. He completed treatment shortly before the present offense. Nonetheless, on July 10, 2019, Parker went out drinking with Morris and two women, 19-year old Jamie Lowry and 20-year-old Cierra Cato. They took Parker's pickup truck to Enoch's Pub in Monroe. Parker was armed with a Taurus 9 mm handgun and Morris had a .40 caliber Glock. Parker became intoxicated and agitated. He thought someone in the parking lot at Enoch's looked at him "the wrong way." He got his gun and was going to "show him." Morris and the women persuaded Parker to leave the man alone.

The four left Enoch's in Parker's truck.  Because Parker was extremely intoxicated, Morris drove.  They went to a convenience store.  On the way, Parker again became agitated, this time over the use of the GPS in the vehicle.  Upon arrival at the store, Morris, Lowry, and Cato went inside, while Parker remained in the truck.  The women went to the restroom and Morris could be seen on the store surveillance video talking with the store clerk.  Morris returned to the vehicle while the women were still in the store and entered the driver's side of the vehicle.  Video surveillance from the store shows Parker, seated in the front passenger seat, moving his arms in an agitated manner.  He reached across the front seat toward Morris's head.  The women returned to the truck and discovered that Morris had been shot in the head.  Parker was holding his gun and refused to put it down.  A witness in the parking lot told officers that, after the shooting was discovered, he saw Parker holding a gun in his right hand, his eyes were wide open, and he was looking around like he was trying to decide what to do.

After police and an ambulance arrived, Morris was pronounced dead at the scene.  Police found Parker in the passenger side of the truck sitting on his Taurus gun.  The gun had blood on the barrel.  He told police, "That don't mean I did it."  One live round and one spent 9 mm shell casing were found on the passenger floorboard.  A gunshot residue test was performed on Parker; the test was positive.

Initially, Parker told police that he went into the store and, when he came back to the vehicle, Morris was dead.  Morris's Glock was in his lap.  It was later determined that Morris's gun had not been fired.  Parker attempted to make the shooting look like Morris had committed suicide.

2

Video showed that Parker never left the vehicle and he later admitted that he lied about how the offense occurred. Parker claimed he did not have a clear memory of what happened at the time of the shooting and he never explained why he shot his friend.

On September 19, 2019, Parker was charged by grand jury indictment with the second degree murder of Morris. Parker was represented by retained counsel. He was released on $500,000 bond.

On September 10, 2020, Parker withdrew his plea of not guilty to second degree murder and entered a plea of guilty to manslaughter. Parker was properly Boykinized and informed of the maximum sentence for manslaughter. The state presented the factual basis for the plea and the court noted that no sentence had been agreed upon. Parker stated he was, in fact, guilty of manslaughter. The trial court accepted the guilty plea and ordered a presentence investigation ("PSI") report. Parker was allowed to remain free on bond pending sentencing, but was ordered to wear an ankle monitor.

Parker appeared before the trial court for sentencing on February 2, 2021. The court ordered that Parker serve 36 years at hard labor, be enrolled in any and all drug rehabilitations programs available, receive counseling for anger management, and undergo job skills training. He was given credit for time served. The trial court properly informed Parker of the time limits for exercising his right to post conviction relief. Parker also signed a form acknowledging that he had been apprised of those time limits.

On February 23, 2021, Parker filed a motion to reconsider sentence. He argued that his sentence of 36 years at hard labor was excessive considering the particulars of this offense. Parker asked the court to reconsider the sentence in light of his extensive rehabilitation treatment,

3

undertaken after making bond in this case. He urged this was an effort to eliminate his substance abuse, which was one of the causes of the offense. Parker argued that the court should reconsider that, when comparing this offense to others of this nature, he is not a "worst offender." He argued there is little likelihood that he will commit another offense. He asserted that a sentence of 36 years at hard labor for a first felony offender is excessive and the court should consider his youth. The motion was denied by the trial court on March 1, 2021.

## EXCESSIVE SENTENCE

Parker appealed, arguing that his sentence was unconstitutionally harsh and excessive given the facts and circumstances of the case. This argument is without merit.

### Legal Principles

An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence. La. C. Cr. P. art. 894.1(C); *State v. Wilson*, 53,913 (La. App. 2 Cir. 5/26/21), 317 So. 3d 923. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Dungan*, 54,031 (La. App. 2 Cir. 9/22/21), 327 So. 3d 634, *writ denied*, 21-01679 (La. 1/26/22), ___ So. 3d ___, 2022 WL 224643; *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332.

4

The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. Dungan*, *supra*. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. Dungan*, *supra*. The trial court is not required to assign any particular weight to any specific matters at sentencing. *State v. Dungan*, *supra*; *State v. Parfait*, 52,857 (La. App. 2 Cir. 8/14/19), 278 So. 3d 455, *writ denied*, 19-01659 (La. 12/10/19), 285 So. 3d 489.

Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Dungan*, *supra*; *State v. Meadows*, 51,843 (La. App. 2 Cir. 1/10/18), 246 So. 3d 639, *writ denied*, 18-0259 (La. 10/29/18), 254 So. 3d 1208.

The trial court has wide discretion to impose a sentence within the statutory limits, and the sentence imposed will not be set aside as excessive absent a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La.

12/13/04), 893 So. 2d 7. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. *State v. Allen*, 49,642 (La. App. 2 Cir. 2/26/15), 162 So. 3d 519, *writ denied*, 15-0608 (La. 1/25/16), 184 So. 3d 1289. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Williams*, 893 So. 2d at p. 14; *State v. Adams*, 53,055 (La. App. 2 Cir. 11/20/19), 285 So. 3d 526, *writ denied*, 20-00056 (La. 9/8/20), 301 So. 3d 15.

As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. However, in cases where the defendant has pled guilty to an offense which does not adequately describe his conduct, the general rule does not apply and the trial court has great discretion in imposing the maximum sentence possible for the pled offense. This is particularly true in cases where a significant reduction in potential exposure to confinement has been obtained through a plea bargain and the offense involves violence upon a victim. *State v. Dungan*, *supra*; *State v. Williams*, 48,525 (La. App. 2 Cir. 11/20/13), 128 So. 3d 1250. *See also State v. Adams*, 53,409 (La. App. 2 Cir. 3/4/20), 293 So. 3d 1187; *State v. Parfait*, *supra*; *State v. Blake*, 51,972 (La. App. 2 Cir. 4/11/18), 247 So. 3d 1026.

Regarding manslaughter, La. R.S. 14:31(B) provides, in part, that whoever commits manslaughter shall be imprisoned at hard labor for not more than 40 years.

**Discussion**

In arguing that his sentence is excessive, Parker notes that it was close to the 40-year maximum for the offense of manslaughter. He contends this was not the most egregious of manslaughter offenses and he is not the worst of offenders. Parker contends that the trial court should have considered that he is young and immature, had only one prior misdemeanor conviction, and that he had some work history.

Parker asserts that he took responsibility for his actions and pled guilty to manslaughter. He acknowledges that he received the benefit of a plea to manslaughter instead of standing trial for second degree murder. However, he maintains that a second degree murder conviction was not certain because there was no account of what precipitated the shooting. He notes that both he and Morris had been drinking and were armed, even though Morris's gun was not fired. He stated in his brief, "A manslaughter verdict was the likely outcome at trial given Caleb Parker lied to police about leaving the car and failed to tell anyone what happened in the car."

A psychological evaluation was conducted on Parker and letters were submitted to the trial court on his behalf. Numerous letters were also submitted by the victim's family and friends, urging that Parker receive the maximum sentence possible. According to the defense, the results of the psychological testing showed a low risk of recidivism by Parker.

At the sentencing hearing, Kylie Brown, Morris's sister, addressed the court concerning the devastating impact on her and her family caused by the

loss of her younger brother.[1] Brown was ten years older than Morris. Their father committed suicide when Morris was three, and their mother died of cancer when he was 11 years old. Brown essentially raised Morris after their mother's death. She felt that her brother was, in many ways, her first child. Brown stated that she was the mother of three children who were significantly impacted by the loss of their uncle. She said that, after high school, Morris had been in the Marines for a while. Brown noted that Parker and Morris were friends for a long time, but when Parker shot Morris, he never called for help or tried to help his friend. Brown expressed concern that Parker was not remorseful for his actions in killing her brother, but had gone on with his life. She expressed anger that Parker had been released on bond. Brown noted that Parker had already received a break by being allowed to plead guilty to manslaughter, and she urged the court to impose the maximum sentence possible, in order to achieve justice for her brother.

Heather Brown also made a statement to the court.[2] She observed that Parker told the police numerous lies and he never called 911 to help Morris. She recounted the impact the loss of Morris had on his family. She also expressed anger that Parker had been allowed to remain free on bond.

Parker addressed the court and the victim's family members. He stated that he did not have any answers, did not deserve forgiveness, and was truly sorry for what happened.

---

[1] In the transcript, the name of the victim's sister is stated to be "Halli Brown." The letters submitted to the court in connection with sentencing show that the sister's name is Kylie Brown. That is the name used in this opinion.

[2] A letter submitted to the court for consideration in sentencing indicated that Heather Brown is Kylie's sister-in-law.

In imposing sentence, the trial court carefully noted all relevant factors and aggravating and mitigating circumstances, as well as the sentencing considerations outlined in La. C. Cr. P. art. 894.1. The trial court considered Parker's family ties, including that he was not married, he had no children, and he was healthy. He had a high school education. The court recognized that Parker was a youthful offender and had the support of his family. The court considered all of the letters submitted on Parker's behalf. The court noted Parker's substance abuse problems and the fact that he had some work history. The court observed that Parker apologized to the victim's family.

In considering the sentencing factors outlined in La. C. Cr. P. art. 894.1, the court noted that Parker's criminal conduct caused serious harm and he contemplated that his actions would cause or threaten serious harm. There was no provocation or motivation for the offense, the victim did not induce or facilitate the offense, and Parker was not acting in self-defense. There were no substantial grounds to justify or excuse Parker's criminal conduct, Parker could not compensate the victim for the harm done, and Parker had a prior criminal history that he failed to take seriously. The trial court was uncertain whether the circumstances were likely to recur, and noted that imprisonment would not entail a hardship on Parker. The court stated that Parker was in need of correctional treatment most effectively provided by commitment to an institution and a lesser sentence would deprecate the seriousness of the offense. The trial court recognized that Parker was originally charged with second degree murder and his plea of guilty to manslaughter eliminated the potential of a life sentence.

The aggravating factors considered by the trial court included Parker's prior DWI, during which he absconded for two years. The court also noted that Parker never called 911 after shooting his friend, he tried to make the shooting look like a suicide, he told lots of lies about what happened, he didn't acknowledge his wrongdoing, he wanted to avoid the consequences, and his friends stopped him from harming someone else earlier in the night just because the person looked at him wrong. He also voluntarily became intoxicated before committing this offense. The court noted that Parker stated he had consumed 24 beers on the date of the offense. According to the court, Parker had been using cocaine, Xanax, THC, and alcohol since the age of 17.

As mitigating factors, the court noted that Parker completed a substance abuse program and had been active in church at one point. He pled guilty, saving the victim's family from going through a trial, and Parker attempted to apologize to Morris's family.

The sentence imposed in this case is not excessive. The sentence is several years less than the maximum that could have been imposed for manslaughter. Parker was originally charged with second degree murder, which caries a penalty of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. By being allowed to plead guilty to manslaughter, Parker received a substantial benefit from his favorable plea agreement. Also, his offense involved violence on the victim.

Parker chose to become extremely intoxicated and chose to shoot his longtime friend in the head for no apparent reason. After the shooting, Parker failed to call 911 or render any aid to his dying friend. He then

10

attempted to make it look like Morris had committed suicide.[3]  Parker placed Morris's gun in his lap and he lied about how the shooting occurred.  Parker intentionally tried to avoid responsibility for his actions.

Given the heinous and senseless nature of this violent offense, Parker's attempts to avoid responsibility for his actions, and the benefit he received from his favorable plea agreement, the sentence is not grossly disproportionate to the seriousness of the offense, and it does not shock the sense of justice.

After reviewing the record in its entirety and considering all of the factors in this case, we find that the trial court acted within its discretion in sentencing Parker to serve 36 years at hard labor.

## CONCLUSION

For the reasons stated above, we affirm the conviction and sentence of the defendant, Samuel Caleb Parker.

**AFFIRMED**.

---

[3] This was a particularly outrageous fabrication given the manner in which Morris's father died.