Judgment rendered August 27, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,386-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

RODERICK C. JETER                           Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 394,802

Honorable Donald Edgar Hathaway, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Peggy J. Sullivan

JAMES E. STEWART, SR.                 Counsel for Appellee
District Attorney

GLENN G. CORTELLO
MARGARET E. RICHIE GASKINS
ASHLIN NICOLE THOMAS
JASON WAYNE WALTMAN
Assistant District Attorneys

* * * * *

Before STONE, HUNTER, and MARCOTTE, JJ.

**STONE, J.**

This appeal arises out of the First Judicial District Court, the Honorable Donald E. Hathaway, Jr., presiding. The defendant, Roderick Jeter ("Jeter"), was charged with home invasion and violation of a protective order (battery of the protected person). A unanimous jury found him guilty of home invasion and returned a responsive verdict of guilty of a misdemeanor violation of a protective order. Jeter was subsequently sentenced to twenty years at hard labor for the home invasion and six months for the violation of the protective order, to be served consecutively. A motion to reconsider Jeter's sentence was denied and he now appeals asserting that his sentence is excessive. For the following reasons, we affirm.

## FACTS

The victim, Catherine O'Neal ("Catherine"), lived in Shreveport, Louisiana with her three children — ages ten, eleven, and twelve. Catherine met Jeter at the Salvation Army and described their relationship as friends, who lived together between 2020-2022. In April 2020, Jeter committed domestic abuse battery upon Catherine in the presence of one of her children. Jeter pled guilty to that offense and was thereafter sentenced to serve one year with the Department of Corrections. In October 2022, a permanent protective order was issued by the court forbidding Jeter from contacting or being around Catherine.

On the morning of April 10, 2023, Catherine was startled by the sound of three loud raps on the front door of her residence. After excusing her children from the living room and directing them to move to the rear of the house, she simultaneously called 911 and retrieved a hammer from her

entertainment center as she neared the front door to investigate the disturbance. According to Catherine, the door "shot open," after which, she contacted the authorities for a second time. Catherine then saw Jeter coming from the side of her house and she attempted to quickly close the door but realized she was unable to do so because the door was completely off its hinges. Jeter then entered Catherine's house and began to struggle with her to retrieve the hammer. After about a minute of "tussling," Catherine realized that Jeter had struck her, and she felt blood on her face and ear. Catherine's children were present during the assault and at least one of them witnessed the altercation.

Shreveport Police Corporal Lakendrick O'Neal ("Cpl. O'Neal") — no relation to Catherine — arrived at the house almost immediately after the assault and witnessed Jeter bent over with a hammer in his hand appearing to repair the front door of the residence. Cpl. O'Neal noticed Catherine's bloody face and the swelling on the left side of her face. He further testified that the lock on the front door appeared bent from the door apparently being kicked in as he also saw a dent in the door. Cpl. O'Neal escorted Jeter to his police unit where he placed Jeter in the backseat while he took a statement from Catherine. Dash cam footage, which was shown to the jury during trial, depicted Jeter making remarks that he would break the door off its hinges *again*. Paramedics were not called to the scene — and at that point — Catherine did not seek any medical attention. Cpl. O'Neal did not take pictures, nor was there any photographic or medical evidence presented to corroborate the existence or nature of any injury Catherine purportedly sustained during the assault. Upon learning that a permanent protective

order was in effect, Cpl. O'Neal arrested Jeter, who was thereafter charged with home invasion and felony violation of a protective order.

A jury trial commenced on September 12, 2024, wherein Catherine testified that she and Jeter had been in contact more than once since the permanent protective order went into effect — 2021 through March 2023 — and stated that she did not contact police on those occasions. Their last known contact was a month prior to the incident, when Catherine invited Jeter to her home. She emphasized, however, that she had not given him permission to come to her house on the day of the assault. Catherine testified that she is still "somewhat" afraid of Jeter, has suffered from PTSD since the incident, and now requires more mental health medication than she did before the attack.

Ebony Fuller ("Fuller"), a manager of the housing authority where Catherine resided, testified that she received a text from Catherine informing her that she (Catherine) heard her front door being kicked in, she needed help, and to call the police. Catherine then texted Fuller "never mind," but as a mandated reporter, Fuller was compelled to go over to Catherine's home to take an incident report. Fuller saw blood coming from Catherine's nose and described her demeanor as "very nervous."

At the end of trial, Jeter was found guilty as charged for the home invasion and the jury returned a responsive verdict of misdemeanor violation of a protective order. Jeter's sentencing hearing was held on October 1, 2024, wherein the trial court described his arrest history as "significant" for domestic abuse-related crimes and violating protective orders. In applying the 894.1 factors, the trial court considered the use of threats or actual violence during the commission of the offense and Jeter's criminal history as

3

aggravating factors for his sentencing. The trial court found that there was an undue risk that Jeter would commit another crime during a period of a suspended sentence or probation and that a lesser sentence would deprecate the seriousness of the crime. No pretrial investigation report was ordered by the trial court; however, prior to imposing Jeter's sentence, the trial court elicited some personal information and found no mitigating factors applicable.[1] Jeter was sentenced to twenty years at hard labor for the home invasion conviction and six months for the violation of the protective order conviction. His sentences were ordered to be served consecutively. He now appeals.

## DISCUSSION

Jeter argues that the trial court did not properly consider the art. 894.1 factors and that his sentence was unconstitutionally harsh and excessive because it was not supported by the facts and circumstances of the offense.

The state argues that Jeter's willingness to commit violent crimes in the presence of children indicates his lack of understanding that his actions enhance the seriousness of his crimes and that a sentence of twenty years is neither grossly disproportionate to his crimes nor shocking to the conscience.

An excessive sentence claim is reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1 and whether the sentence is constitutionally excessive. *State v. Dowles*, 54,483 (La. App. 2 Cir. 5/25/22), 339 So. 3d 749; *State v. Vanhorn*,

---

[1] Jeter was sentenced less than a month before his thirty-eighth birthday; he had a ninth-grade education, and he was not working at the time he was arrested. In describing his upbringing, Jeter told the trial court that his father had been in jail for most of his life, noting that he only knew his first cousins, mother, aunts, and his grandmother. Jeter did not mention any sort of relationship with his paternal family.

52,583 (La. App. 2 Cir. 4/10/19), 268 So. 3d 357, *writ denied*, 20-00745 (La. 11/19/19), 282 So. 3d 1065.  First, the record must show that the trial court took cognizance of the criteria set forth in La. Cr. C. P. art. 894.1.  The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions.  The trial court is not required to list every aggravating or mitigating circumstance, so long as the record reflects that it adequately considered the guidelines of the article.  *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Croskey*, 53,505 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1151.

The Eight Amendment of the United States Constitution and Article I § 20 of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment.  Although a sentence falls within statutory limits, it may be excessive. *State v. Sepulvado*, 367 So. 2d 762 (La. 1979).  The appellate court must determine if the sentence is constitutionally excessive.  *State v. Smith*, 01-2574 (La. 1/14/03), 839 So. 2d 1.  To assess a claim that a sentence violates La. Const. art. I, §20, the appellate court must determine if the sentence is grossly disproportionate to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey,* 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980).  A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.  *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Meadows*, 51, 843 (La. App. Cir. 1/10/18), 246 So. 3d 639, *writ denied*, 18-0259 (La. 10/29/18) 254 So. 3d 1208.  The sentencing court has wide discretion to impose a sentence within the statutory limits, and the sentence imposed will not be set aside as

excessive absent a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Gaines*, 54,383 (La. App. Cir. 2/22/23), 358 So. 3d 194, *writ denied*, 23-00363 (La. 6/21/23), 362 So. 3d 428; *State v. Tubbs*, 52, 417 (La. App. 2 Cir. 11/20/19), 285 So. 3d 536, *writ denied,* 20-00307 (La. 7/31/20), 300 So. 3d 404, *on recons*., 20-00307 (La. 9/8/20), 301 So. 3d 30, and *writ denied*, 20-00307 (La. 9/8/20), 301 So. 3d 30. Whoever commits the crime of home invasion shall be imprisoned at hard labor for not less than one year nor more than thirty years. La. R.S. 14:62.8 (B).

We find no abuse of discretion in the sentence imposed on Jeter. Pursuant to La. C. Cr. P. art. 894.1, factors considered before imposing sentence include but are not limited to personal history, prior criminal history, seriousness of the offense, likelihood of rehabilitation, etc. In sentencing Jeter, the primary factors applied by the trial court include: (1) threats or actual violence in the commission of the offense, and (2) prior criminal history.

Violence was inflicted upon Catherine during the invasion as she suffered from a bloody and swollen face. Jeter disregards witness testimony that confirms this harm by arguing that Catherine's choice not to seek medical attention after the attack and the absence of photographic evidence of her injuries mitigates violence being inflicted on her. By this logic, Jeter seemingly alludes to there being no harm to Catherine, which is woefully inaccurate. First, testimonial evidence is sufficient to prove that violence occurred, and harm was sustained. Secondly, Jeter completely ignores the

6

psychological damage he caused to Catherine and her children during the commission of this offense. Specifically, that: (1) Catherine suffers from PTSD; (2) Catherine must now use a higher dosage of medication to aid in her mental health; (3) Catherine remains afraid of Jeter; (4) Catherine's children were home during the home invasion; and (5) the children witnessed the violent attack upon their mother. Not feeling safe or secure in certain environments or witnessing a violent assault against anyone would be unnerving to any child at the very least — but for children to witness the attack of their own mother, in their own home, is undoubtedly terrifying, extremely traumatic, and will not be glossed over by us.

Jeter further argues that it was improper for the trial court to consider violence as an aggravating factor during sentencing because the legislature, in formulating the sentencing range, has already taken violence into consideration as one of the elements of the offense itself. We disagree with this construction as the element of home invasion includes the *intent* to use force or violence upon the person of another. Home invasion is a general intent crime. *State v. Williams*, 49,249 (La. App. 2 Cir. 10/1/14), 149 So. 3d 462, *writ denied*, 14-2130 (La. 5/22/15), 173 So. 3d 1167. General criminal intent is present when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. *See,* La. R.S. 14:10 (2). Jeter had the requisite intent by going to Catherine's home (uninvited) which was prohibited by the permanent protective order and entering (without her consent) by forcing the door off its hinges. After entering, Jeter injured Catherine by incorporating violence during the commission of the home invasion. Jeter notes that Catherine's

7

continued contact with him despite the protective order in effect should have been considered a mitigating factor in his sentencing. This court neither overlooks Catherine's disregard for her safety (or that of her children), nor her blatant disregard of a court order, and apparently, the jury did not either — when it returned a responsive verdict of misdemeanor violation of a protective order.

A review of Jeter's prior criminal history reveals convictions and sentences for: (1) home invasion for which he received, and served, a five-year sentence; (2) simple robbery for which he received probation (that was later revoked); and (3) violation of protection orders and domestic abuse battery with child endangerment to the current victim for which he received, and served, a one-year sentence. Jeter has exhibited a pattern of violent behavior toward Catherine in the presence of her children. It is abundantly clear to us that Jeter has not responded well to noncustodial treatment. His history of the commission of the same crimes is indeed significant (as iterated by the trial court), and demonstrates his lack of remorse, his lack of insight and his unlikely rehabilitation if he was ordered to serve a lesser sentence. Due to the gravity and dangerous nature of this offense, a lighter sentence would deprecate the seriousness of home invasion. As previously mentioned, the maximum number of years a defendant can be sentenced for a home invasion is thirty years. The trial court's decision to impose a twenty-year sentence instead of thirty years is proof of the trial court's consideration and weighing of Jeter's personal history against the severity of his repeated crimes.

Based on the record, we find that Jeter's sentence was not grossly disproportionate to the seriousness of his offenses. The trial court properly

considered the art. 894.1 factors and did not abuse its discretion in sentencing Jeter to twenty years for home invasion.

During our review we noticed that the minutes reflect that the one-day trial occurred on May 5, 2024, and the transcript shows the trial was held on September 12, 2024. Where there is a discrepancy between the minutes and the transcript, the transcript prevails. *State v. Smith*, 53,827 (La. App. 2 Cir. 3/3/21), 315 So. 3d 407; *State v. Burns*, 53,250 (La. App. 2 Cir. 1/15/20), 290 So. 3d 721. Therefore, we remand this matter to the trial court with instructions to amend the minutes to accurately reflect the date of trial.

## CONCLUSION

For the reasons expressed, we affirm Roderick Jeter's convictions and sentences, and this matter is remanded with instructions to amend the court minutes consistent with this opinion.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**