Judgment rendered May 20, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,478-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Appellee

versus

JERRY LYNN PECK                       Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Morehouse, Louisiana
Trial Court No. 2017-247F

Honorable C. Wendell Manning, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Douglas Lee Harville

ROBERT S. TEW                        Counsel for Appellee
District Attorney

STEPHEN SYLVESTER
JOHN G. SPIRES
Assistant District Attorneys

* * * * *

Before WILLIAMS, McCALLUM, and THOMPSON, JJ.

**WILLIAMS, C.J.**

The defendant, Jerry Lynn Peck, was charged by bill of information with second degree kidnapping, a violation of La. R.S. 14:44.1, aggravated burglary, a violation of La. R.S. 14:60, and armed robbery, a violation of La. R.S. 14:64. Following a jury trial, the defendant was found guilty as charged. He was sentenced as follows: 40 years at hard labor without the benefit of probation, parole or suspension of sentence for the second degree kidnapping conviction; 30 years at hard labor for the aggravated burglary conviction; and 99 years at hard labor without the benefit of probation, parole or suspension of sentence for the armed robbery conviction. The sentences were ordered to be served concurrently. For the following reasons, we affirm in part, reverse in part and remand.

## FACTS

On March 13, 2017, at approximately 4:00 p.m., Virginia Limerick ("the victim"), returned to her home in Bastrop, Louisiana, following a trip out of town. Shortly after she arrived home, the victim heard a knock on her door and noticed a "short, heavy set" white male, later identified as the defendant, Jerry Lynn Peck. The defendant was standing at the victim's door holding an envelope in his hand.[1] When the victim opened the door to inquire about the envelope, the defendant entered her home without her consent. Once the defendant gained entry, he struck the victim in the face with a closed fist, knocking her to the floor. He then placed his foot on her chest. The defendant pulled the victim from the floor by her arm and forced

---

[1] During her testimony at trial, the victim identified the defendant as the man who was standing at her door. Throughout the trial, the defendant was seated in a wheelchair. However, the victim stated that he was not in a wheelchair when he committed the offenses.

her to sit in a chair. According to the victim, the defendant "appeared to be angry" and repeatedly asked her about a check she had supposedly mailed to his father.[2] When the victim replied that she did not know him or his father, the defendant pulled out a gun, pointed it at her and demanded money from her. The victim told the defendant that she did not have any money, so he asked her if she had any drugs or jewelry in her home. The defendant took the scarf the victim was wearing around her neck and bound her hands behind her back. He searched the victim's purse and stole her credit cards and cell phone. Thereafter, the defendant asked the victim where her jewelry was located. When the victim replied that her jewelry was located in her bedroom, the defendant went to look for it. At that point, the victim was able to free herself and run outside. While outside, she observed a "black VW" vehicle parked in her driveway. The victim contacted the Bastrop Police Department.[3]

Detective Richard Pace, of the Bastrop Police Department ("BPD"), responded to the call. During his investigation, Det. Pace learned that the Morehouse Parish Sheriff's Office ("MPSO") was investigating a similar incident that had occurred shortly before the offenses in this case were committed. Det. Pace ascertained that the person identified in the MPSO

_____

[2] In November 2016, the victim had authorized her bank to issue a check in the amount of $1,000. She mailed the check to Christian Life Fellowship in Mer Rouge, Louisiana. However, the victim later cancelled the check because it had not been cashed. The victim later discovered that the church never received the check. The defendant refused to tell the victim why he was in possession of the check. The defendant later told law enforcement officers that he had gotten the check from someone who had stolen it from a mailbox. According to the defendant, the person who gave him the check instructed him to go to the address listed on the check to "get money from the person who wrote the check."

[3] The victim was later taken to the hospital to be treated for the injuries she sustained. She had a large bruise on the right side of her face and multiple contusions on her upper right arm. The victim testified that her chest x-ray revealed that her ribs had "separated," but she had not sustained any broken bones.

matter matched the description of the offender the victim in this case had described.

Subsequently, law enforcement officers received a "tip" that the defendant had been identified as the perpetrator in the MPSO matter. The BPD created a photographic lineup, which included photographs of the defendant and five other men, and presented it to the victim. The victim positively identified the defendant as her assailant.

On March 15, 2017, the defendant was apprehended in West Monroe, Louisiana, and was transported to the Ouachita Correctional Center. The defendant began the interview with the law enforcement officers by stating, "I did it." At that point, the defendant was advised of his *Miranda* rights and executed a waiver of rights form. Thereafter, the defendant confessed to entering the victim's home, knocking her to the floor, and tying her hands with a scarf "or some type of clothing." The defendant further stated that the gun he used was a BB gun and was "not a real gun," and he apologized for his actions. Additionally, the defendant stated that he was "dying of cancer" and had been prescribed multiple medications. He also stated that on the day of the incident, he had tried methamphetamine for the first time. According to the defendant, the drug had "set his brain on fire" from the moment it entered his bloodstream.

The defendant was placed under arrest and was charged by bill of information with second degree kidnapping, a violation of La. R.S. 14:44.1, aggravated burglary, a violation of La. R.S. 14:60, and armed robbery, a violation of La. R.S. 14:64. Following a jury trial, the defendant was found guilty as charged. The trial court denied the defendant's motion for a new trial. He was sentenced as follows: (1) 40 years at hard labor without the

3

benefit of probation, parole or suspension of sentence for the second degree

kidnapping conviction; (2) 30 years at hard labor for the aggravated burglary

conviction; and (3) 99 years at hard labor without the benefit of probation,

parole or suspension of sentence for the armed robbery conviction. The

sentences were ordered to be served concurrently.

The defendant now appeals.

## DISCUSSION

The defendant contends the trial court's instructions to the jury

allowed for a non-unanimous verdict, and the jury's 11-1 verdict of guilty

for second degree kidnapping violated his Sixth Amendment rights.

He argues that Louisiana no longer allows non-unanimous verdicts in felony

cases.[4]

In *State v. Ramos*, 2016-1199 (La. App. 4 Cir. 11/2/17), 231 So. 3d

44, *writs denied*, 2017-2133 (La. 6/15/18), 257 So. 3d 679, 2017-1177 (La.

10/15/18), 253 So. 3d 1300, the defendant was convicted of second degree

---

[4] An amendment to Louisiana Constitution art. I, § 17 was approved by voters in a statewide election in November 2018. That section now provides, in pertinent part:

> A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case for an offense committed prior to January 1, 2019, in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. A case for an offense committed on or after January 1, 2019, in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, all of whom must concur to render a verdict[.]

Likewise, the Legislature amended La. C. Cr. P. art. 782(A) in 2018, to provide in pertinent part:

> A case for an offense committed prior to January 1, 2019, in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. A case for an offense committed on or after January 1, 2019, in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, all of whom must concur to render a verdict.

4

murder by a vote of 10-2. The murder was committed in 2014; he was found guilty in 2016. The defendant appealed his conviction, arguing that the trial court erred in denying his motion to require a unanimous jury verdict. He asserted that La. C. Cr. P. art. 782 violates the Equal Protection Clause contained in the Fourteenth Amendment of the United States Constitution and Louisiana's statutory scheme permitting non-unanimous jury verdicts in noncapital felony cases should be declared unconstitutional. The court upheld the constitutionality of Article 782, finding that under current jurisprudence from the U.S. Supreme Court, non-unanimous 12-person jury verdicts are constitutional. The court noted that in *State v. Bertrand*, 2008-2215 (La. 3/17/09), 6 So. 3d 738, the Louisiana Supreme Court reversed the trial court's finding that La. C. Cr. P. art. 782(A) violated the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, relative to the number of jurors needed to concur to render a verdict in cases in which punishment is necessarily confinement at hard labor.

The United States Supreme Court granted *certiorari* in *Ramos v. Louisiana*, 139 S. Ct. 1318, 203 L. Ed. 2d 563 (2019), to determine whether the Fourteenth Amendment fully incorporates the Sixth Amendment guarantee of a unanimous verdict. On April 20, 2020, while the defendant's appeal was pending in this Court, the United States Supreme Court held that the Sixth Amendment right to a jury trial, as incorporated by the 14th Amendment, requires a unanimous verdict to convict a defendant of a serious offense in both federal and state courts. See *Ramos v. Louisiana*, __ U.S. __, __ S. Ct. __, __ L. Ed. 2d __, 2020 WL 1906545 (2020).

In the instant case, as stated above, the jury was not unanimous in finding the defendant guilty of the offense of second degree kidnapping. In light of the United States Supreme Court's ruling in *Louisiana v. Ramos*, *supra*, we reverse the defendant's conviction for second degree kidnapping. Thus, the sentence imposed for that offense is hereby vacated.

The defendant also contends the trial court erred in imposing "unconstitutionally harsh and excessive sentences." He argues that he is 69 years old and suffers from multiple health conditions, such as "Paget's disease of bone," chronic pain, cardiac disease, hypertension and diabetes. The defendant also asserts that he is confined to a wheelchair and has been assigned to the prison's skilled nursing unit.

An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. *State v. Payne*, 52,310 (La. App. 2 Cir. 1/16/19), 262 So. 3d 498 citing *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 2016-0959 (La. 5/1/17), 219 So. 3d 332.

The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. DeBerry*, *supra*. The important elements which should

6

be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. DeBerry*, *supra*. There is no requirement that specific matters be given any particular weight at sentencing. *State v. DeBerry*, *supra*; *State v. Shumaker*, 41,547 (La. App. 2 Cir. 12/13/06), 945 So. 2d 277, *writ denied*, 2007-0144 (La. 9/28/07), 964 So. 2d 351.

Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 2001-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Meadows*, 51,843 (La. App. 2 Cir. 1/10/18), 246 So. 3d 639, *writ denied*, 2018-0259 (La. 10/29/18), 254 So. 3d 1208.

As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Cotten*, 50,747 (La. App. 2 Cir. 8/10/16), 201 So.3d 299. The sentencing court has wide discretion in imposing a sentence within statutory limits, and such a sentence will not be set aside as excessive in the absence of manifest abuse of that discretion. *State v. Williams*, 2003-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Duncan*, 47,697 (La. App. 2 Cir. 1/16/13), 109 So. 3d 921, *writ denied*, 2013-0324 (La. 9/13/13), 120 So. 3d 280. The trial court is in the best position to consider the aggravating and mitigating circumstances of a

7

particular case, and, therefore, is given broad discretion in sentencing. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So. 2d 957, *cert. denied*, 519 U.S. 1043, 117 S. Ct. 615, 136 L. Ed. 2d 539 (1996).

The penalty for aggravated burglary is imprisonment at hard labor for not less than one nor more than 30 years. La. R.S. 14:60(B). The penalty for armed robbery is imprisonment for not less than 10 nor more than 99 years without benefit of parole, probation or suspension of sentence. La. R.S. 14:64(B).

In the instant case, prior to imposing the defendant's sentence, the trial court stated that it had reviewed the presentencing investigation report. It noted the following: the defendant had a "staggering" criminal history; the defendant's classification as a seventh-felony offender; at the time of the offense, the defendant had been sentenced to hard labor on ten prior occasions; and the defendant was 69 years old at the time of sentencing.

The trial court then summarized the defendant's criminal history as follows: the defendant was arrested for first degree murder in Calcasieu Parish in 1968 (at the age of 18), pled guilty to manslaughter and was sentenced to 15 years at hard labor; the defendant has been arrested at least 22 times in multiple parishes; the defendant's criminal history included six counts of simple burglary, three counts of theft, two counts of forgery, and a federal conviction for possession of a firearm by a convicted felon; and the defendant's prior sentences (ranging from 18 months to 15 years in prison) have failed to deter his criminal behavior.

Further, the trial court referenced other offenses committed by the defendant that were similar to the instant offenses. The trial court stated as follows: on January 11, 2000, the defendant and a co-defendant, armed with

8

firearms, confronted a man who was returning to his home located in Wilson County, Tennessee; the victim was ordered to go into his house and was tied up while the defendant and his co-defendant emptied the victim's pockets and questioned him about his credit cards; the defendant and his co-defendant stole guns and other property from the victim, then fled the scene, stealing the victim's vehicle as they left; the defendant was later found driving the victim's car and led police on a high-speed chase (at one point, attempting to run over a pursuing law enforcement officer); the pursuit ended with the defendant crashing the vehicle into a tree; and the defendant was convicted of aggravated burglary, aggravated robbery, and kidnapping, and was sentenced to 10 years, 20 years, and 10 years, respectively.

Additionally, the trial court noted the defendant's probation and parole record spans five decades with multiple revocations. The court then recited the facts leading to the defendant's instant convictions. The trial court found the following factors set forth in La. C. Cr. P. art. 894.1 to be relevant: (1) there is an undue risk that the defendant will commit another crime; (2) the defendant is in need of correctional treatment; (3) a lesser sentence would deprecate the seriousness of the defendant's offenses; (4) the defendant received something of value for the commission of the offenses, *i.e.*, the victim's cell phone and credit cards; (5) the defendant used threats of violence and actual violence in the commission of his offenses; (6) the defendant used a dangerous weapon in the commission of his crimes; and (7) the defendant used a dangerous weapon while committing an offense which has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, and which by its very nature,

involves a substantial risk that physical force may be used in the course of committing the offense.

Subsequently, the trial court recited the defendant's personal and family history, noting the defendant's alcohol abuse and his statement expressing remorse for the instant offenses. The court acknowledged that maximum sentences are appropriate only in cases involving the most serious offenses and the worst type of offender. The trial court expressed its belief that the defendant was the worst type of offender, based on the defendant's "staggering" criminal history. The trial court stated that it did not find the defendant's statement that he would not have committed his offenses against the victim had he been "in his right mind" to be credible.

We have reviewed this record in its entirety. The record demonstrates that the defendant entered the home of an elderly woman, without her consent, with the intent to "get money from the person who [had written a] check." Once the defendant gained entry into the victim's residence, he struck her in her face, knocking her to the floor. He tied her hands behind her back, pointed a gun at her, demanded money and jewelry from her, and stole her credit cards and cell phone. Although the victim managed to escape, the defendant's actions demonstrated deliberate cruelty toward her.

The defendant received the maximum sentences for the crimes he committed and now complains that he suffers from substantial health challenges. However, his instant crimes and his alarming criminal history establish that he is one of the worst offenders and that there is an undue risk that he will commit another crime. This record clearly demonstrates that the defendant is in need of correctional treatment and that a lesser sentence would deprecate the seriousness of his crimes.

10

In light of the danger the defendant created by his offenses and his astounding criminal history, the sentences imposed are not so grossly disproportionate to the severity of the crimes that they shock the sense of justice, nor do these sentences appear to be the needless infliction of pain and suffering.  Thus, we find no abuse of the trial court's discretion.  Consequently, the defendant's sentences are not constitutionally excessive.

## CONCLUSION

For the foregoing reasons, the defendant's convictions and sentences for aggravated burglary and armed robbery are affirmed.  The defendant's conviction for second degree kidnapping is reversed and the sentence imposed for that offense is vacated.  We remand this matter to the trial court for further proceedings.

**CONVICTIONS AND SENTENCES FOR AGGRAVATED BURGLARY AND ARMED ROBBERY AFFIRMED; CONVICTION FOR SECOND DEGREE KIDNAPPING REVERSED; SENTENCE FOR SECOND DEGREE KIDNAPPING VACATED; REMANDED FOR FURTHER PROCEEDINGS.**